**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SEQUOIA KING, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM SERVICES LLC and AMAZON.COM, INC.,<br><br>Defendants. | Civil Action No.: 1:26-cv-694<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff SeQuoia King ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Amazon.com Services LLC and Amazon.com, Inc. ("Amazon" or "Defendants"). Plaintiff makes these allegations based on personal knowledge as to her own actions, her counsel's investigation and upon information and good faith belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices by Defendants with respect to their Amazon Basics Hypoallergenic Body Wash for Sensitive Skin (the "Product.").

2. The market for skin-sensitive hygiene and beauty products has exploded as consumers seek products that can help relieve, or otherwise not agitate, certain skin irritations brought on by conditions like eczema and external conditions like pollution, stress, and exposure to harsh weather.

3. This action involves one such line of Products: Defendants' Hypoallergenic Body Wash for Sensitive Skin (the "Product"). Sold on Amazon under Defendants' "Basics" collection, the Product claims on the label to be "hypoallergenic." Images on the same sales page reaffirm

this quality, prominently noting that the Product is "Dermatologist tested," and provides a "[g]entle cleaning and [is] hypoallergenic."

4. But the Product isn't hypoallergenic. The Product is made with fragrance chemicals and fragrance chemicals are some of the most common causes of skin allergies. As the American Academy of Dermatology has explained, about 2.5 million Americans have fragrance allergies.[1]

5. The term "Fragrance" on a hygiene product is broad. Defendants do not specify which make up the "fragrances" in its Product. This makes sense since "[t]he term 'hypoallergenic' may have considerable market value in promoting cosmetic products to consumers on a retail basis, but dermatologists say it has very little meaning."[2] Indeed, "[i]t's estimated that more than 3,000 chemicals are used to make up the fragrances that are found in everyday personal products, cosmetics, and cleaning items."[3] By claiming that the Product is a simple, clean, hypoallergenic product, Defendants take advantage of this market desire while selling a Product loaded with allergen-causing fragrance chemicals.

6. Accordingly, Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

---

[1] WEBMD, *Fragrance Allergiecs: What's the Smell?* https://www.webmd.com/allergies/fragrances?page=3.

[2] UNITED STATES FOOD AND DRUG ADMIN., *"Hypoallergenic" Cosmetics,* https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics.

[3] WEBMD*, supra* note 1.

## PARTIES

7. Paintiff SeQuoia King is a New York citizen and resident of The Bronx, New York. Plaintiff purchased the Product on multiple occasions from Defendants' Website, Amazon.com, from her home including as recently as November 22, 2025. In so doing, Plaintiff purchased the Product in part because she sought a body wash advertised and marketed as being made for "sensitive skin." Plaintiff regularly seeks out hygiene products that do not contain irritants due to her psoriasis. Plaintiff reviewed Defendants' representations that the Product was "hypoallergenic" and made for sensitive skin, and dermatology tested and so reasonably believed that the Product did not contain any ingredients known to be irritants, like fragrances.

8. Had Defendants disclosed that the Product contained ingredients known to cause skin irritation, like fragrances, Plaintiff would not have purchased the Product or would not have paid the same amount that she did. Plaintiff purchased and paid more for the Product than she would have as a result of Defendants' misrepresentation and omission concerning the ingredients and hypoallergenic nature of it. Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

9. Defendant Amazon.com Services LLC is a Washington limited liability company with its principle place of business in Seattle, Washington.

10. Defendant Amazon.com, Inc. is a Washington corporation with its principal place of business in Seattle, Washington.

11. Together, Defendants manufacture, market, advertise, and distribute the Product throughout New York and the United States through their website, Amazon.com. Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Product.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), in that: (1) this is a class action involving more than 100 class members and at least one class member is a citizen of a state different from at least one Defendant; and (2) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

13. This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the state of New York, and contract to supply goods within the State of New York, such that they have continuous and systematic contacts with the State of New York.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

15. The market for hypoallergenic hygiene products is one of the fastest growing. Some estimates project this segment to reach more than $80 billion in market share by 2030. This is credited largely to consumers' awareness of skin sensitivities.[4]

16. This market is driven by "growing consumer focus on skin integrity and dermatological care[.] Increasing awareness of conditions such as eczema, xerosis, and barrier dysfunction has prompted individuals to seek out soap with clinically validated benefits."[5] For example, "approximately 16.5 million adults in the United States suffer from eczema, with 90%

---

[4] GRAND VIEW RESEARCH, *Sensitive Skin Care Products Market (2024-2030)*, https://www.grandviewresearch.com/industry-analysis/sensitive-skin-care-products-market-report#:~:text=The%20global%20sensitive%20skin%20care,using%20gentle%20and%20hypoallergenic%20products.

[5] MARKET DATA FORECAST, *North America Bath Sopa Market Size, Share, Growth Trends, and Forecast Research Reprot, Segmented by Product, Form, and County (The United States, Canda, Mexico, Rest of North America), Industry Analysis From (2025 to 2033)*, https://www.marketdataforecast.com/market-reports/north-america-bath-soap-market.

reporting that their choice of cleanser directly impacts flare frequency."[6] Consumers thus have turned to the hypoallergenic products to avoid these issues.

17. The "American Academy of Dermatology note[ed] a 33% increase in consumer inquiries about fragrance-free and hypoallergenic soaps between 2020 and 2023, reflecting a shift toward medical-grade formulations."[7] Consumers seeks hypoallergenic products for more than just eczema and psoriasis, however. Consumers seeking hypoallergenic products, like Plaintiff, expect a product that is fragrance free to provide they benefits the label claims. Indeed, "adding scent is the only purpose of these fragrances — these ingredients do not play a role in the actual cleansing of [the] skin."[8]

18. Defendants manufacture and sell one such Product to capitalize on this massive market trend.

19. Defendants' Amazon Basics Hypoallergenic Body Wash for Sensitive Skin is present to consumers with a very clear set of representations on a simple label:

[6] *Id.*

[7] *Id.*

[8] Advanced Dermatology & Skin Cancer Associates, *The 7 Best Fragrance-Free Body Washes for Sensitive Skin,* https://advanceddermatologymemphis.com/2022/09/20/the-7-best-fragrance-free-body-washes-for-sensitive-skin/#:~:text=Patel%2C%20agrees%20that%20moisturizing%20oatmeal,Murphy%2DRose%20recommends.




20. The front label is relatively plain, touting the benefits that the Product is "sensitive skin body wash" that is "Dermatologist tested," and made with a "[g]entle [c]leaning," "[f]ormulated without [p]arabins," and "[h]ypoallergenic."




21. On the back, however, the Product states that it contains "FRAGRANCE."



22. According to the F.D.A.,[9] specific fragrance ingredients don't need to be identified. But there are more than 26 different chemicals identified by the European Union Cosmetics Directive that often make up the vague fragrance ingredient in hypoallergenic products. One, if not multiple, likely comprise Defendants' fragrance ingredient:

- Amyl cinnamal
- Amylcinnamyl alcohol
- Anisyl alcohol
- Benzyl alcohol
- Benzyl benzoate
- Benzyl cinnamate
- Benzyl salicylate
- Cinnamyl alcohol
- Cinnamaldehyde
- Citral
- Citronellol
- Coumarin
- Eugenol
- Farnesol
- Geraniol
- Hexyl cinnamaladehyde
- Hydroxycitronellal
- Hydroxyisohexyl 3-cyclohexene carboxaldehyde (HICC), (also known as Lyral)
- Isoeugenol
- Lilial
- d-Limonene
- Linalool
- Methyl 2-octynoate
- γ-Methylionone
- Oak moss extract
- Tree moss extract

[9] UNITED STATES FOOD AND DRUG ADMIN., *Allergens in Cosmetics,* https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics.

23. Fragrances in body washes are one of the primary cases of contact dermatitis. Contact dermatitis is a rash caused by direct contact with a substance or an allergic reaction to it. "Many substances can cause this reaction, such as cosmetics, fragrances, jewelry and plants. The rash often shows up within days of exposure."[10] Symptoms include rashes and itchy skin, dry skin, bumps, blisters, cracked skin, and/or leathery skin.[11] Notably, contact dermatitis can occur without the appearance of a rash. Persistent itches are a classic sign.[12]

24. While there is no legal requirement for what can and cannot be labeled as hypoallergenic, consumers' understandings fill that gap. Tellingly, "[b]ack in the 70s, FDA suggested that the hypoallergenic label should only be applied to products proven to reduce allergic reactions. But big name manufacturers fought back saying that those tests would cost too much."[13]

25. Merriam-Webster defines "hypoallergenic" to mean "having little likelihood of causing an allergic response."[14] But companies, like Defendants, put the "hypoallergenic" label where they can to sell products, even if the Product contains an ingredient, fragrances, known to be one of the most common sources of skin irritation. As the American Academy of Dermatology has recognized, that about 2.5 million Americans have fragrance allergies.

26. This is a common practice. One set of "[r]esearchers analyzed 187 children's personal care products with labels such as hypoallergenic, dermatologist recommended and tested,

---

[10] MAYO CLINIC, *Contact Dermatitis,* https://www.mayoclinic.org/diseases-conditions/contact-dermatitis/symptoms-causes/syc-20352742.

[11] *Id.*

[12] FOREFRONT DERMATOLOGY, *Is It Possible to Have a Rash You Can't See? Itching Without Notable Rash*, https://forefrontdermatology.com/is-it-possible-to-have-a-rash-you-cant-see-itching-without-a-noticeable-rash/#:~:text=Eczema%2C%20which%20is%20a%20general,causing%20a%20rash%20to%20appear.

[13] Britannica, *What Does Hypoallergenic Really Mean for Consumer Products?*, https://www.britannica.com/video/claims-products/-207626.

[14] MERRIAM-WEBSTER, *Hypoallergenic,* https://www.merriam-webster.com/dictionary/hypoallergenic.

and paraben free. [And found] 89% contained at least one chemical known to cause a skin rash. 11% contained 5 or more allergens that can cause a reaction on contact."[15]

27. Defendants are another company that takes advantage of this labeling opportunity to sell deceptive products. Amazon's own comparable products illustrate this point. Amazon sells an "Amazon Basics Body Wash for Moisturizing Skin" with nearly the same label as the hypoallergenic Product at issue here:







28. Aside from the colors, the only difference between this product at the hypoallergenic Product is the removal of the phrases "sensitive skin," "hypoallergenic" and references to parabens on the label. These are substituted for the inclusion of representations about moisturizing on the moisturizing product. Indeed, both tout the benefits of being

---

[15] Britannica, *Supra* note 13.

"Dermatologist tested" and made for "gentle" cleaning. And critically, the ingredients are identical:




Back panel ingredient list of Defendants' *Hypoallergenic* Product




Back panel ingredient list of Defendants' *moisturizing* body wash

29. Both list the final ingredient as "FRAGRANCE." It is entirely unclear what makes Defendants' Hypoallergenic Product, for sensitive skin, different from any others. And, it does not appear that the Hypoallergenic Product removes known irritants that supposedly warrants a label different from the non-hypoallergenic products.

30. Thus, Defendants' Hypoallergenic labeling is misleading. Contrary to Defendants' express representations, the Product is not hypoallergenic at all. The Product is no different than Defendants' non-hypoallergenic moisturizing body wash.

31. But consumers, like Plaintiff, sought a product specifically formulated—as represented—for sensitive skin. This means removing the skin irritants that consumers, like Plaintiff, would expect from a hypoallergenic product.

32. Defendants' prominent display on its otherwise limited front label shows that Defendants intended for consumers to see and rely on their representations that the Product is

intended for sensitive skin and hypoallergenic. Defendants knew, as the entities controlling the labeling, marketing, and production of the Product, the messages they caused to be printed while concurrently affixing the labeling at issue to a Product that contained fragrances as an ingredient—and otherwise had an identical ingredient composition to its non-hypoallergenic products.

## CLASS ALLEGATIONS

32. Plaintiff brings her claims for relief pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class (collectively "the Class"):

> All consumers who purchased the Products in the State of New York at any time during the relevant statute of limitations.

33. Excluded from the Class is any governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

34. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

35. **Numerosity:** Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

36. **Commonality:** The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased their Product;

b. Whether the Products contain fragrance chemicals, what type, and in what quantities;

c. Whether reasonable consumers understand hypoallergenic to mean the Product is free from allergen-causing fragrances;

d. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants had engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Product;

e. Whether Defendants' false and misleading statement concerning their Product were likely to deceive the public; and

f. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

37. **Typicality:** Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Product and suffered the same injury. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

38. **Adequacy:** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, she has a strong interest in vindicating her rights and the rights of the Class, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

39. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and

misleading marketing and labeling practices.

40. **Superiority:** A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will ensure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendants' uniform false advertising to purchase their Products because they contain dark chocolate ingredients and not lead.

41. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is

superior to other available methods for fairly and efficiently adjudicating this controversy.[16]

**CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and Class)**

42. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

43. Plaintiff brings this claim individually and on behalf of the Class against Defendants.

44. This claim is brought pursuant to the laws of the State of New York.

45. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

46. Defendants committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the presence of skin allergen ingredients in its sensitive skin, hypoallergenic its Products.

47. Information as to ingredients within its fragrance ingredient are within Defendants' exclusive control. Moreover, Plaintiff is not required to look to the back label of the Product to find information contradictory the express representations prominent on the front.

48. Defendants' deceptive acts and practices were directed at consumers.

49. Defendants' deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendants knew consumers would purchase its Product and/or pay more for it under the false – but reasonable – belief that the Product was free of any skin irritating ingredients that cause—or risks causing—allergic reactions. But Defendants

[16] Plaintiff reserves the right to amend or modify the Class definition as this case progresses.

included its fragrance ingredients in the Product despite claiming it to be made for sensitive skin and hypoallergenic.

50. Defendants were able to sell the Product at a higher price than they otherwise could as a result of the claim that the Product is hypoallergenic.

51. Defendants know that health information about its food products is material to consumers. If such information were not material, Defendants would not market the Product as being for sensitive skin and hypoallergenic when it contained nearly the same ingredients as its non-hypoallergenic alternative. As a result of its deceptive acts and practices, Defendants sold tens if not hundreds of thousands of Products to unsuspecting consumers across New York.

52. If Defendants had advertised the Products truthfully and in a non-misleading fashion, Plaintiff and other Class Members would not have purchased them or would not have paid as much as they did for them.

53. As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiff and other Class Members were injured in that would not have purchased the Product, or would have paid substantially less for it, but for Defendants' misrepresentations and omissions concerning present of fragrances in their hypoallergenic Product.

54. On behalf of herself and Members of the Class, Plaintiff seeks to recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and Class Members)**

55. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

56. Plaintiff brings this claim individually and on behalf of Class Members against Defendants.

57. This claim is brought pursuant to the laws of the State of New York.

58. N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

59. N.Y. Gen. Bus. Law § 350-A(1) provides, in part, as follows: "The term 'false advertising,' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

60. Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent the existence of lead in the Products. By misrepresenting the true contents of the Products, Defendants' marketing and labeling misleads a reasonable consumer.

61. Defendants had exclusive knowledge of the ingredient and ingredient composition in the Product.

62. Defendants' misrepresentations and omissions were material because consumers, like Plaintiff, buy similar products with preferences toward hygiene products without skin allergens—especially when the product is labeled as hypoallergenic and made for sensitive skin.

63. As a result of Defendants' misrepresentations and omissions, Plaintiff and members of the Class suffered economic injury because they would not have purchased the Products, or would have paid substantially less for it, if they had known that the Product contained allergy-causing ingredients: fragrances.

64. Defendants were able to sell the Product at a higher price than they otherwise could as a result of the claim that the Product is hypoallergenic.

65. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were, and continue to be, exposed to Defendants' material misrepresentations.

66. As a result of Defendants' recurring, unlawful deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring the Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff, and the Class on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiff, the Class their reasonable attorney's fees and expenses and costs of suit.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 6, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
Max S. Roberts

Max S. Roberts
Victoria X. Zhou
Caroline C. Donovan
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com
vzhou@bursor.com
cdonovan@bursor.com

*Attorneys for Plaintiff*